PHYLLIS MONTAGUE BLACKLEY (NOW PHYLLIS DANIEL) v. ROBERT HARRY BLACKLEY

No. 739DC377

(Filed 27 June 1973)

**Divorce and Alimony § 24— child custody — no finding of changed circumstances — modification of order improper**

　　Evidence was insufficient to show a change of circumstances affecting the welfare of the parties' son so as to justify a modification of the prior orders awarding custody to the mother where such evidence tended to show that the mother had remarried, her husband had paid several antenuptial overnight visits to her home, the child's stepfather had "popped him on the bottom" several times to discipline him, the child's natural father had remarried, but there was no indication that the father wanted custody of the children, that his wife wanted the children in their home, or where and under what circumstances the children would live if placed in his custody.

APPEAL by plaintiff from orders entered by *Banzet, District Judge* on 5 June 1972 and 27 December 1972.

Plaintiff and defendant were married on 2 July 1961. Plaintiff was then 16 years old. Two children were born of this

marriage, Robert on 24 December 1962 and Teresa on 6 February 1965. The parties separated on 4 January 1966 and were divorced on 21 July 1967. Plaintiff was awarded custody of and support for the children. Defendant married his present wife, Janet, a few days after the divorce. Plaintiff married Don Daniel on 5 December 1971.

On 24 November 1971 defendant filed a motion in the cause alleging that plaintiff was unfit to have custody of the children. The motion was heard on the 9th and 20th of December, 1971. The essence of defendant's evidence to support his allegations of unfitness was that prior to plaintiff's marriage to her present husband, she allowed Daniel to spend the night in her residence several times and the children had seen Daniel in plaintiff's bedroom prior to the marriage. There was also evidence that on several occasions Daniel had "popped" the male child on his bottom. Defendant called his son, Robert, to the witness stand. Robert confirmed his stepfather's premarital visits in his mother's home and that his stepfather had spanked him a few times. In his words, "[e]very now and then people make mistakes and they get popped on the bottom." Robert told the court that he has a good time in his father's home and likes to stay there; he knows his mother loves him and his sister and that he has never been mistreated by his mother or his stepfather; he has a good time with his stepfather; they go camping, fishing and make model airplanes together. Defendant offered evidence to the effect that, in other respects, plaintiff has been a fit mother and has taken good care of the children. Defendant now lives with his present wife, Janet, and Janet's ten-year-old child of another marriage. Janet works as a beauty operator and frequently works at night. When both defendant and his wife have to work during the children's weekend visits, the children stay with defendant's parents who live nearby. Defendant's wife did not testify and no evidence was offered as to her wishes or her willingness to accept the responsibility of caring for the children born to plaintiff and defendant.

Plaintiff offered evidence tending to show: there was nothing improper about her present husband's premarital visits to her home; the children are loved and given excellent care; her present husband is good to the children and has never been unfair to them, though he has, with plaintiff's permission, "popped" Robert on the bottom to discipline him; Daniel loves the children and wants them to have the training that is vital

Blackley v. Blackley

for their well-being; the children are well adjusted and happy; the children are happy when they are with plaintiff's husband and are devoted to each other.

At the end of the hearing on 20 December 1971, the judge advised the litigants that he would consider the case and render judgment at a later date. An order was entered on 5 June 1972 directing that Robert be taken from plaintiff, his mother, and placed with his father, the defendant. Teresa was left in the custody of her mother. On 14 June 1972, plaintiff filed a motion for a new trial as provided by Rule 59. In addition to alleging errors in law and the insufficiency of the evidence to support the judgment, plaintiff alleged matters tending to show the excellent relationship that had continued to develop between plaintiff, her husband and the children during the long period between the hearing and the entry of the order; that defendant's relationship with his wife Janet had deteriorated; that there is turmoil and confusion in defendant's home and that defendant's wife, Janet, has threatened to leave when defendant gets custody of the children. The motion was supported by affidavits of plaintiff, her husband and others. No responsive pleadings or counter affidavits were filed by defendant. On 27 December 1972 the judge entered an order denying plaintiff's motion. Plaintiff appealed from the order entered 5 June 1972 changing the custody of her son and the order entered 27 December 1972 denying her motion made under Rule 59.

*Arthur Vann for plaintiff appellant.*

*No brief filed for defendant appellee.*

VAUGHN, Judge.

No findings were made as to fitness of either party to have custody of the children, the court saying only that defendant's evidence was inconclusive and failed to show unfitness on the part of plaintiff. The court found: " . . . that the plaintiff respondent has cared for the physical needs of the children, that both are well and healthy; that they have been properly schooled, and that they have been taken to Sunday School regularly, and have responded satisfactorily to all such training." The court also found that, prior to plaintiff's marriage to Daniel, Daniel spent the night in the home of plaintiff on Christmas Eve 1970 and on November 4 and November 5, 1971, one month before the marriage; that on numerous occasions

Daniel had taken what was described as naps of ten minutes to two hours duration in plaintiff's bedroom; that before the marriage and after it Daniel had, with plaintiff's permission, spanked the male child or "popped him on the rear" by way of correction or punishment. The court further found "that Bobby is old enough to understand the impropriety of Mr. Daniel's antenuptial sojourns overnight in the home of plaintiff respondent and to resent the same; that the knowledge and recognition of these improprieties and the chastisement by his stepfather adversely affect him and will continue to do so; that it will be for the best interest of Bobby that the care, custody and control of him be given to his father, the movant"; " . . . that Teresa Annette is seven years of age; that she appeared in Court with her stepfather, sat in his lap during part of the proceedings, appeared to be friendly or affectionate with him, and has not been shown by the evidence to have been spanked or chastised by her stepfather and is found not to be adversely affected by his relationship; that the Court finds that it is for the best interest of said Teresa that the care, custody and control of her continue to remain with her mother, the respondent, Mrs. Phyllis Daniel."

The evidence is insufficient to support the judge's findings that Robert has been and will be adversely affected because of the chastisement by his stepfather or his stepfather's premarital visits with plaintiff. There was no evidence offered to support the finding that it will be for the benefit of Robert to remove him from the custody of his mother, with whom he has lived for his entire life and who has been his sole custodian since the separation of the parties on 4 January 1966, thereby separating him from his sister. There is no evidence to support the finding that it will be to the child's best interest to place him in the custody of defendant. Defendant testified in detail as to his nocturnal surveillance of plaintiff's home but offered no evidence as to where or under what circumstances the children would live if placed in his custody. He did not testify that he wanted the children placed with him or offer evidence as to wishes of his present wife as to having the children placed in their home. In his motion in the cause defendant did not ask the court to place the children with him but did ask the court to inquire into the conduct of plaintiff and make such orders regarding the custody of the children that might appear to be for their best interest.

The evidence is insufficient to show a change of circumstances affecting the welfare of the child so as to justify a

modification of the prior orders awarding custody to the mother. The order of 5 June 1972, from which plaintiff appealed, is vacated. Earlier orders in the cause, which the order appealed from sought to modify, remain in full force and effect.

Vacated.

Judges BROCK and HEDRICK concur.